WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tendai Henry,<br><br>              Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>              Defendant. | No. CV-23-00933-PHX-MTL<br><br>**ORDER** |

At issue is the denial by the Social Security Administration of Plaintiff Tendai Henry's application for Title XVI supplemental security income benefits under the Social Security Act. Plaintiff filed a complaint (Doc. 1) with the Court seeking review of her claim. The Court has reviewed the briefs (Docs. 17, 19, 20) and the administrative record (Docs. 13, 14 "A.R."), and now reverses the Administrative Law Judge's ("ALJ") decision and remands for further proceedings.

**I.    BACKGROUND**

Plaintiff filed an application for supplemental security income benefits on February 5, 2020, for a period of disability beginning on July 1, 2015. (A.R. at 13.) Plaintiff's claims were initially denied on May 19, 2020 (*id.* at 135-50), and upon reconsideration on August 26, 2020. (*Id.* at 152-69.) Thereafter, Plaintiff filed a request for a hearing which was held before the ALJ on March 23, 2022. (*Id.* at 16.) On June 2, 2022, the ALJ issued a ruling unfavorable to Plaintiff. (*Id.* at 10-33.) Plaintiff subsequently filed a request for review, which was denied on March 31, 2023. (*Id.* at 1-6.) Plaintiff now seeks judicial review with

this Court pursuant to 42 U.S.C. § 405(g).

The Court has reviewed the record and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the following severe impairments: right knee osteoarthritis, obesity, depression, and schizophrenia. (A.R. at 16.) Plaintiff appeals based only on her mental health impairments. (Doc. 17 at 3.)

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. at 17.) Next, the ALJ determined Plaintiff's residual functional capacity ("RFC").[1] The ALJ found:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. The claimant can frequently stoop and crouch but only occasionally kneel and crawl. The claimant can never work at unprotected heights or around moving mechanical parts. The claimant can have only occasional exposure to dust, odors, fumes and pulmonary irritants, extreme heat or extreme cold. The claimant is limited to performing simple, routine and repetitive tasks but not at a production rate pace such as assembly line work. The claimant is limited to simple work-related decisions. The claimant can frequently interact with coworkers, supervisors and the public.

(*Id.* at 19.) Based on this RFC, the ALJ found Plaintiff could not perform any past relevant work; however, the ALJ also found that there were still a significant number of jobs in the national economy that Plaintiff could perform. (*Id.* at 26.) Consequently, the ALJ concluded that Plaintiff was not disabled under § 1614(a)(3)(A) of the Social Security Act. (*Id.* at 28.)

## II.  LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only

---

[1] Residual functional capacity refers to the most a claimant can still do in a work setting despite his or her limitations. 20 C.F.R. § 416.945(a)(1).

those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the entire record. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019); *see also Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting substantial evidence "is an extremely deferential standard").

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i), (b). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 416.920(a)(4)(ii), (c). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(a)(4)(iii), (d). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 416.920(a)(4)(iv), (e). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the

fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v), (f). If not, the claimant is disabled. *Id.*

### III.    DISCUSSION

Plaintiff raises two issues before the Court. First, Plaintiff argues the ALJ erred by rejecting the opinion of Plaintiff's treating psychiatrist, Diane Papke, M.D., without providing sufficient explanation supported by substantial evidence and without explaining the consideration of the supportability and consistency factors. (Doc. 17 at 12.) Second, Plaintiff argues the ALJ erred in rejecting her symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record as a whole. (*Id.* at 18.)

### A.    Medical Opinion Evidence

Plaintiff argues that the ALJ committed materially harmful error when he rejected Dr. Papke's assessment without sufficient explanation supported by substantial evidence and without adequately explaining the consideration of the supportability and consistency factors. (*Id.* at 12.) The Court disagrees.

In 2017, the Commissioner revised the regulations for evaluating medical evidence for all claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). Because Plaintiff filed her claim after the effective date, the revised rules apply. (A.R. at 16.) Unlike the old regulations, the revised rules do not require an ALJ to defer to the opinions of a treating physician nor assign every medical opinion a specific evidentiary weight. 20 C.F.R. § 404.1520c(a).

The revised rules require the ALJ to consider all opinion evidence and determine the persuasiveness of each medical opinion's findings based on factors outlined in the regulations. 20 C.F.R. § 416.920c(a)-(c)(1)-(2). The most important factors ALJs consider are "consistency" and "supportability." 20 C.F.R. § 416.920c(b)(2). Supportability focuses on evidence intrinsic to the medical opinion, requiring adjudicators to look at the relevance

of the objective medical evidence and explanations cited as support for the physician's medical opinion. *Id.* § 416.920c(c)(1). In contrast, consistency focuses on evidence extrinsic to the medical opinion, requiring adjudicators to compare consistency of the opinion to other evidence in the record. *Id.* § 416.920c(c)(2). The ALJ can, to a lesser degree, consider other factors such as the length and purpose of the treatment relationship, the kinds of examinations performed, and whether the medical source personally examined the claimant. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

The Ninth Circuit held that "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* Therefore, an ALJ, "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)) (internal citations omitted).

Here, Dr. Papke completed a "medical assessment of claimant's ability to perform work related activities (mental)" on May 6, 2020 (A.R. at 426-27), again on January 29, 2021[2] (*id.* at 963-64), and for a third time on April 27, 2022 (*id.* at 1565-66). All three assessments indicate that Dr. Papke believed Plaintiff had impairments that would preclude an eight hour work day. (*Id.* at 426, 963, 1565.) In the first assessment, Dr. Papke opined Plaintiff "would have severe limitation in her ability to relate to other people, activities of daily living; understand, carry out and remember instructions; respond appropriately to supervision and coworkers; respond to customary work pressures; sustain work pace; and perform simple work tasks." (*Id.* at 25.) In the second assessment, Dr. Papke opined Plaintiff "would have severe limitations in her activities of daily activities; understand, carry out and remember instructions; respond appropriately to supervision; respond appropriately to coworkers; respond to customary work pressures; and sustain work pace." (*Id.*) And in the third assessment, Dr. Papke opined Plaintiff "would have severe limitations

---

[2] This assessment is dated "1/29/2020." This date is likely an error because of its position in the record. To be consistent with the ALJ, this Court will also refer to it as a January 2021 assessment. The assessment's date does not affect the Court's analysis.

- 5 -

in her ability to relate to other people; understand, carry out and remember instructions; respond appropriately to supervision; respond to customary work pressures; sustain work pace; and perform simple tasks." (*Id.*) The ALJ did not further discuss the medical assessments. (*Id.*) One category, "estimated degree of restriction of daily activities" did shift two levels between assessments — from severe to moderate — however, the ALJ did not make note of this. (*See id.* at 963, 1565.) Otherwise, the assessments are fairly consistent, with certain findings occasionally shifting a single degree of severity depending on the assessment. (*Id.* at 426, 963, 1565.)

The ALJ subsequently stated that he did "not find Dr. Papke's opinions persuasive as *severe* limitations are not supported by treatment notes nor consistent with the entirety of the record." (*Id.* at 25) (emphasis added.) The ALJ listed a variety of medical findings which appeared to support Dr. Papke's assessments, although not to the degree of severity listed by the doctor:

> The medical evidence supports that the claimant suffers from depression and schizophrenia (Ex. B7F/13). The claimant attended outpatient therapy and was prescribed psychiatric medication (Ex. B5F, B7F). She reported auditory and visual hallucinations (Ex. B4F/54, B7F/1, 484). At times, she had poor insight and judgment (Ex. B4F/27, B5F/264, B7F/168, 243, 450). In addition, the claimant testified she has difficulty getting along with others. The claimant had a depressed and anxious mood (Ex. B4F/64, B5F/272, 338, B7F/484, 525). On occasion, the claimant's demonstrated an impaired memory, poor attention span and concentration (Ex. B7F/19), which is consistent with moderate limitations.

(*Id.*) The ALJ then listed other evidence which the ALJ found to be inconsistent with Dr. Papke's testimony about the severity of Plaintiff's symptoms:

> However, the claimant is able to perform within the above residual functional capacity. The claimant was consistently alert and oriented (Ex. B1F/4, B4F/21, B5F/46, B7F/26). She denied having homicidal or suicidal ideations (Ex. B4F/14, B5F/273, B7F/90, 209, 451). The claimant also denied having auditory and visual hallucinations (Ex. B5F59, 264, B7F/450).

- 6 -

>Further, she had a concrete and logical thought process (Ex. B4F/64, B5F/49, 264, B7F/459, 493). At times, the claimant had normal insight and judgment (Ex. B4F/21, B5F/46, 258, B7F/7, 525). She demonstrated average intelligence (Ex. B5F/272, B7F/7, 450). The claimant also had a normal memory (Ex. B1F/4, B2F/3, B7F/168, 243). Moreover, she was cooperative and made eye contact (Ex. B4F/54, B5F/59, B7F/7, 571).[3]

(*Id.*)

Although very sparse, and repeated from the analysis of other medical opinions, the ALJ did nevertheless adequately addresses both the supportability and consistency factors when finding Dr. Papke's testimony unpersuasive. Additionally, the ALJ's finding that Dr. Papke's medical opinion is unpersuasive is supported by substantial evidence. *See Orn*, 495 F.3d at 630 ("[Substantial evidence] is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (cleaned up)).

As noted above, the ALJ stated that he did "not find Dr. Papke's opinions persuasive as severe limitations are not *supported* by treatment notes nor *consistent* with the entirety of the record." (A.R. at 25) (emphasis added.) The ALJ then stated that evidence from both treatment notes and objective medical evidence were found to be only "consistent with *moderate* limitations." (*Id.*) (emphasis added.) To show how the record supported moderate limitations, the ALJ first noted that Plaintiff suffers from depression and schizophrenia (A.R. at 977), was prescribed psychiatric medication (*see, e.g.*, A.R. at 805), reported hallucinations (*see, e.g.*, A.R. at 481), occasionally reported impaired memory (*see, e.g.*, A.R. at 983), and, at times, had poor insight and judgement. (A.R. at 859.) Next, the ALJ found some inconsistencies between Dr. Papke's testimony and the record, which show substantial evidence of moderate rather than severe limitations. (A.R. at 25.) For example, the ALJ noted that Plaintiff was "consistently alert and oriented," denied homicidal and

---

[3] These statements were repeated word-for-word when determining the credibility of two other physicians, but this does not impact the analysis regarding Dr. Papke. (*Id.* at 23-24.)

- 7 -

suicidal ideations, occasionally showed concrete[4] and logical thinking, demonstrated average intelligence, was cooperative (with her medical providers), and made eye contact. (*Id.*) These findings are all substantial evidence to support finding only *moderate* limitations. Although not explicitly, all of the medical findings cited by the ALJ relate to either the consistency or supportability of Dr. Papke's testimony and are supportive of his decision to find only moderate rather than severe limitations.

Indeed, analyzing the record to determine if Plaintiff's limitations are severe or instead only moderate is a judgement decision; however, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Although Plaintiff argues that the evidence would in fact "interfere with [Plaintiff's] ability to remain on task at a job to a severe degree" (Doc. 17 at 15), it is nevertheless the ALJ's duty to weigh the evidence and make that determination themselves. *See Tommasetti*, 533 F.3d at 1041. The ALJ thus properly used his discretion to weigh the medical evidence and found only a moderate limitation, allowing him to find Dr. Papke's testimony unpersuasive.

### B.     Symptom Testimony

Plaintiff next argues that the ALJ erred in rejecting her symptom testimony without providing specific, clear, and convincing reasons. (Doc. 17 at 19.) The Court agrees.

An ALJ employs a two-step process in evaluating a claimant's symptom testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ considers whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). Then, provided no evidence of malingering exists, the ALJ must evaluate the claimant's statements in the context of the objective medical

---

[4] In the field of schizophrenia, concrete thinking is defined as "thinking of objects or ideas as specific items rather than as an abstract representation of a more general concept, as contrasted with abstract thinking. *Concrete thinking*, STEDMANS MEDICAL DICTIONARY 915840. Concrete thinking is abnormal as compared to ordinary thought processing in adults. *See Dixon v. Shin,* No. CV-14-00258-PHX-DJH, 2022 WL 1469788, at *6 (D. Ariz. May 10, 2022). Therefore, the ALJ's reliance on evidence of concrete thinking as support for Plaintiff's limitations only being moderate was erroneous. Nevertheless, there is other substantial evidence supporting the ALJ's decision, making this error harmless.

evidence and other evidence in the record. *See* 20 C.F.R. § 416.929(c)(2)-(3). At this step, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (internal quotation marks omitted). This requirement prevents an ALJ from "arbitrarily discredit[ing]" the claimant's subjective symptom testimony. *Thomas*, 278 F.3d at 958. Despite the "clear and convincing standard [being] the most demanding required in Social Security cases," *Garrison*, 759 F.3d at 1015 (cleaned up), the ALJ need not "believe every allegation of disabling pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Instead, when assessing the claimant's credibility, the ALJ may consider "inconsistencies either in [the] claimant's testimony or between his testimony and his conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the] claimant complains." *Barnhart*, 278 F.3d at 958-59 (cleaned up). Should the district court find that the ALJ's specific, clear, and convincing reasons are supported by substantial evidence, the court must not second guess the ALJ's judgment and should affirm the ALJ's decision. *See Fair*, 885 F.2d at 604.

Here, in evaluating Plaintiff's testimony the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the above alleged symptoms . . . ." (A.R. at 21.) At step two, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this record." (*Id.*) Nevertheless, the ALJ's decision to discredit Plaintiff's symptom testimony is not evidenced by specific, clear, and convincing reasons.

Here, the ALJ first found which symptoms Plaintiff alleged caused her to be unable to work. (*Id.* at 20.)

> In the instant case, the claimant alleges entitlement to disability benefits based upon a combination of severe physical and

> mental impairments. . . .The claimant also reported suffering from depression, bipolar disorder, anxiety and schizophrenia. The claimant reported she sees a psychiatrist and takes medication. She testified she has auditory and visual hallucinations. In addition, the claimant reported having difficulty getting along with others. She testified she thinks people are confrontational and talking about her (Ex. B3E, Hearing Testimony).

(*Id.*)

Next, the ALJ listed the medical record, beginning with evidence that appeared to support Plaintiff's testimony. (A.R. at 22.)

> The medical evidence supports that the claimant suffers from depression and schizophrenia (Ex. B7F/13). . . . The claimant attended outpatient therapy and was prescribed psychiatric medication (Ex. B5F, B7F). She reported auditory and visual hallucinations (Ex. B4F/54, B7F/1, 484). A times, the claimant had a depressed and anxious mood (Ex. B4F/64, B5F/272, 338, B7F/484, 525). On occasion, the claimant's memory was impaired (Ex. B7F/19). Further, she demonstrated poor attention span and concentration (Ex. B7F/19). At times, she had poor insight and judgment (Ex. B4F/27, B5F/264, B7F/168, 243, 450).

(*Id.*) The ALJ then noted "[h]owever, other evidence is inconsistent with the claimant's allegations of disabling symptoms." (*Id.*) Following this statement was other evidence from the record, which stated:

> The claimant was consistently alert and oriented (Ex. B1F/4, B4F/21, B5F/46, B7F/26). She denied having homicidal or suicidal ideations (Ex. B4F/14, B5F/273, B7F/90, 209, 451). The claimant also denied having auditory and visual hallucinations (Ex. B5F59, 264, B7F/450). IN addition, she was cooperative and made eye contact (Ex. B4F/54, B5F/59, B7F/7, 571). At times, the claimant had a normal mood (Ex. B1F/4, B2F/3, B4F/21, B7F/19, 243, 516). She demonstrated average intelligence (Ex. B5F/272, B7F/7, 450). The claimant also had a normal memory (Ex. B1F/4, B2F/3, B7F/168, 243). Further, she had a concrete and logical thought process (Ex. B4F/64, B5F/49, 264, B7F/459, 493). At times, the claimant

>had normal insight and judgment (Ex. B4F/21, B5F/46, 258, B7F/7, 525).

(*Id.*)

The ALJ erred when considering Plaintiff's symptom testimony. The ALJ did not explain which testimony was found to be inconsistent with the record, apart from the vague mention of "evidence [being] inconsistent with the claimant's allegations of disabling symptoms." (A.R. at 22.) ALJs must "specify which testimony they find not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (cleaned up). Merely stating that the evidence is inconsistent with "allegations of disabling symptoms," (A.R. at 22), then listing facts from the medical record is insufficient under the specific, clear, and convincing standard. *Id.* ("We hold that an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her [RFC] determination."); *see also Sullivan v. Comm'r of Soc. Sec. Admin.*, No. CV-21-01501-PHX-MTL, 2022 WL 2527115, at *5 (D. Ariz. July 7, 2022) ("The analysis of the medical record was never specifically or clearly linked to Sullivan's symptom testimony. Stated another way, the ALJ never explained *why* the medical evidence discredited her testimony.") (citation omitted).

Here, the ALJ listed the entire medical record, which included both evidence supporting and potentially contradicting Plaintiff's testimony, and then arbitrarily decided the Plaintiff lacked credibility. The ALJ's failure to explain why the medical evidence discredited Plaintiff's testimony was error under the specific, clear, and convincing reasons standard. *See Brown-Hunter*, 806 F.3d at 489.

In addition, the ALJ gives no clear reason why the evidence contradicting Plaintiff's testimony should be given more weight than the evidence supporting her testimony, further showing a failure to meet the specific, clear, and convincing reasons standard. As noted by the Ninth Circuit, certain mental health issues "wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. Thus, the fact that that Plaintiff, at times, denied hallucinations

(*see, e.g.*, A.R. at 467), does not necessarily discredit other parts of the record where Plaintiff *did* report hallucinations. (*See, e.g.*, A.R. at 481.) The same can be said about discrepancies in the medical record about the claimant's insight and judgement, memory, mood, and attention span. (A.R. at 22.) Thus, if the ALJ finds certain parts of the medical record to be more credible than others and thus contradict Plaintiff's testimony, he must explain that in a specific, clear, and convincing way. *See Garrison*, 759 F.3d at 1014-15; *see also Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (noting the applicable standard requires the ALJ to "show his work"). Thus, remand is necessary.

## IV.    CREDIT AS TRUE RULE

After determining that the ALJ made an error sufficiently serious to warrant a remand, the Court decides whether it will apply the credit-as-true rule. The credit-as-true rule allows a court to remand a Social Security case for an award of benefits rather than remand the case for additional evidence. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014).

Although the ordinary remedy for reversible error is to remand the case for further administrative proceedings, the credit-as-true rule may apply in rare circumstances where three conditions are present. *Garrison*, 759 F.3d at 1020. The three conditions are:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* Even then, the rule is rarely applied because the decision to remand or apply the rule is discretionary and courts "frequently exercise their discretion to remand for further proceedings, rather than benefits." *Treichler*, 775 F.3d at 1102 (cleaned up).

Here, further proceedings would be useful to allow the ALJ to reassess Plaintiff's symptom testimony. *Supra* Section III.B. The ALJ could then incorporate the new findings, if any, into hypotheticals posed to a vocational expert. Neither of these changes would

*require* the ALJ to find Plaintiff disabled. For example, even if her testimony was credited as true, the vocational expert's opinion could remain unchanged and the ALJ could still conclude that Plaintiff is not disabled. Thus, elements (1) and (3) of the *Garrison* test are not met. Therefore, the Court will not apply the credit-as-true rule here.

## V.     CONCLUSION

Accordingly,

**IT IS ORDERED reversing** the June 2, 2022 decision by the Administrative Law Judge (A.R. at 10-33) and **remanding** this case to the Administration for further administrative proceedings consistent with this decision.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 12th day of June, 2024.

Michael T. Liburdi
United States District Judge